Erica C. Mirabella
MIRABELLA LAW, LLC
132 Boylston Street, 5th Floor
Boston, MA  02116
(617) 580-8270
(617) 583-1905 (fax)
erica@mirabellaLLC.com

*Counsel for Plaintiff*
[Additional Counsel listed on signature page]

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAUL O'DONNELL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GNC HOLDINGS, INC., GENERAL NUTRITION CORPORATION, GENERAL NUTRITION CENTERS, INC.,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>Jury Trial Demanded |

## CLASS ACTION COMPLAINT

Plaintiff Paul O'Donnell ("Plaintiff"), through his undersigned attorneys, brings this lawsuit against GNC Holdings, Inc., General Nutrition Corporation, and  General Nutrition Centers, Inc. (hereinafter "GNC" or "Defendants") as to his own acts upon personal knowledge, and as to all other matters upon information and belief.  In order to remedy the harm arising from Defendants' illegal conduct, which has resulted in unjust profits, Plaintiff bring this action on behalf of Massachusetts consumers specifically defined herein, who purchased either:

(a) GNC "Herbal Plus" Gingko Biloba
(b) GNC "Herbal Plus" St. John's Wort
(c) GNC "Herbal Plus" Ginseng
(d) GNC "Herbal Plus" Echinacea

## INTRODUCTION

1. On February 2, 2015, New York Attorney General Eric T. Schneiderman sent a demand letter to GNC Holdings, Inc.'s CEO Michael G. Archbold, ordering GNC to immediately cease and desist engaging in the sale of adulterated and mislabeled herbal dietary supplements. These products included various GNC "Herbal Plus" supplements, including GNC "Herbal Plus" Gingko Biloba, GNC "Herbal Plus" St. John's Wort, GNC "Herbal Plus" Ginseng, and GNC "Herbal Plus" Echinacea ("the Misbranded GNC "Herbal Plus" Products") that either could not be verified to contain the labeled substance, or which were found to contain ingredients not listed on the labels.

2. Attorney General Schneiderman requested that Defendants provide detailed information relating to the production, processing and testing of herbal supplements sold at their stores, as well as set forth a thorough explanation of quality control measures in place.

3. The Attorney General's letter expressly warned Defendants that, "contamination, substitution and falsely labeling herbal products constitute deceptive business practices and, more importantly, present considerable health risks for consumers."

4. The letter came as DNA testing, performed as part of an ongoing investigation by the Attorney General's Office, revealed that all of the Misbranded GNC "Herbal Plus" Product were negative for the ingredient listed on the front of the package.

5. An expert in DNA barcoding technology, Dr. James A. Schulte II of Clarkson University in Potsdam, N.Y., was hired by the Attorney General's office to perform the testing.

2

6. DNA barcodes are short genetic markers in an organism's DNA and are used to identify it as belonging to a particular species. Barcodes provide an unbiased, reproducible method of species identification. Barcodes can be used to determine the exact plant species being tested.

7. All of the Misbranded GNC "Herbal Plus" Products tested negative for the advertised package contents according to the testing performed. In reality, they contained, among other things, garlic, rice, wheat/grass, and/or dracaena (a tropical houseplant) and *none* of the gingko biloba, echinacea, St. John's wort, or ginseng they purported to contain.

8. Plaintiff and members of the Class relied on Defendants' representations that the Misbranded GNC "Herbal Plus" Products were what they purported to be: supplements containing gingko biloba, echinacea, St. John's wort, or ginseng. Plaintiff and members of the Class did not purchase Defendants' supplement to ingest garlic, rice, wheat/grass, or a tropical houseplant, among other things, none of which were gingko biloba, echinacea, St. John's wort, or ginseng.

9. Studies conducted by the Centre for Biodiversity Genomics at the University of Guelph and others have previously alerted the dietary supplement industry to the fact that it is not providing the public with authentic products without substitution, contamination or fillers.

10. According to Attorney General Schneiderman:

> "this investigation makes one thing abundantly clear: the old adage 'buyer beware' may be especially true for consumers of herbal supplements," "The DNA test results seem to confirm long-standing questions about the herbal supplement industry. Mislabeling, contamination, and false advertising are illegal. They also pose unacceptable risks to New York families—especially those with allergies to hidden ingredients. At the end of the day, American corporations must step up to the plate and ensure that their customers are getting what they pay for, especially when it involves promises of good health."

11. According to Arthur P. Grollman, M.D., Professor of Pharmacological Sciences at Stony Brook University, "this study undertaken by Attorney General Schneiderman's office is a well-controlled, scientifically-based documentation of the outrageous degree of adulteration in the herbal supplement industry."

12. Using DNA barcoding technology to examine the contents of herbal supplements, the Attorney General focused on what appears to be Defendants' practice of substituting contaminants and fillers in the place of authentic product.

13. The testing revealed that all of the retailers were selling a large percentage of supplements for which modern DNA barcode technology could not detect the labeled botanical substance.

14. If the producers of herbal supplements fail to identify all the ingredients on a product's label, a consumer with food allergies, or who is taking medication for an unrelated illness, is taking a potentially serious health risk every time a contaminated herbal supplement is ingested.

15. Plaintiff and members of the Class did not purchase Defendants' supplements to assume these risks and would not have purchased Defendants' products if they had known they were contaminated and potentially dangerous.

16. The Misbranded GNC "Herbal Plus" Products were and are worthless as a matter of law, failing to contain any of the advertised ingredients. A full return of the purchase price is warranted for the purchase of these supplements.

## PARTIES

17. Plaintiff Paul O'Donnell is a resident of Andover, Massachusetts, who purchased Defendants' misbranded and adulterated products in Massachusetts during the four (4) years prior to the filing of this Complaint (the "Class Period"). Specifically, Paul O'Donnell purchased GNC "Herbal Plus" Ginseng at the GNC locations in Stoneham, Massachusetts and Burlington, Massachusetts.

18. Defendant General Nutrition Centers, Inc. is a Pennsylvania Corporation operating in California with a principal place of business at 300 Sixth Ave., Pittsburgh, PA 15222. Defendant General Nutrition Corporation, doing business as GNC, is a Pennsylvania Corporation operating in California with a principal place of business at 300 Sixth Ave., Pittsburgh, PA 15222. Defendant GNC Holdings, Inc. is a Pennsylvania Corporation operating in California with a principal place of business at 300 Sixth Ave., Pittsburgh, PA 15222.

19. Massachusetts law applies to all claims set forth in this Complaint because Plaintiff lives in Massachusetts and purchased Defendants' product here. Also, Defendants sells products in Massachusetts. The misconduct alleged herein was implemented in Massachusetts and has a shared nexus with Massachusetts. The formulation and execution of the unlawful practices alleged herein occurred in, or emanated from, Massachusetts. Accordingly, Massachusetts has significant contacts and/or a significant aggregation of contacts with the claims asserted by Plaintiff and all Class members.

## JURISDICTION AND VENUE

20. This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendants; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

21. The Court has jurisdiction over the federal claim alleged herein pursuant to 28 U.S.C. § 1331, because it arises under the laws of the United States.

22. The Court has jurisdiction over the Massachusetts claims alleged herein pursuant to 28 U.S.C. § 1367, because they form part of the same case or controversy under Article III of the United States Constitution.

23. Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, and is between citizens of different states.

24. The Court has personal jurisdiction over Defendants because a substantial portion of the wrongdoing alleged in this Complaint occurred in Massachusetts, Defendants are authorized to do business in Massachusetts, have sufficient minimum contacts with Massachusetts, and otherwise intentionally avail themselves of the markets in Massachusetts through the promotion, marketing and sale of merchandise, sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

25. Because a substantial part of the events or omissions giving rise to these claims occurred in this District and because the Court has personal jurisdiction over Defendants, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b).

## FACTUAL ALLEGATIONS

26. Plaintiff Paul O'Donnell purchased GNC "Herbal Plus" Ginseng in Stoneham, Massachusetts and Burlington, Massachusetts.

27. In so doing, Plaintiff reasonably relied on the label of the GNC "Herbal Plus" Ginseng. That is, when Plaintiff purchased GNC "Herbal Plus" Ginseng, he believed he was purchasing a product containing ginseng.

28. In reality, however, recent testing has revealed that Defendants' GNC "Herbal Plus" Ginseng contains no ginseng, but instead contains oryza (rice), dracaena (a tropical house plant), and/or pinus strobus (white pines), among other substances.

29. The other Misbranded GNC "Herbal Plus" Products are also not what they purport to be. Specifically, GNC "Herbal Plus" Gingko Biloba contains no gingko biloba, but instead

6

contains oryza and dracaena, among other substances; GNC "Herbal Plus" St. John's Wort product contains no St. John's Wort, but instead contains oryza, allium, and/or dracaena; and GNC "Herbal Plus" Echinacea contains no echinacea, but instead contains pine and/or ranunculaceae (flowering plans from the buttercup family), or no plant substances at all.

30. In other words, while Defendants purport to sell their customers herbal supplements, the supplements are a sham, containing none of the active ingredient promised in the product's name and on the label.

31. The adulterated and misbranded GNC "Herbal Plus" Products are worthless.

32. A reasonable purchaser would believe that Defendants' products did in fact contain the ingredients listed on the labels.

33. A reasonable purchaser would believe that Defendants' GNC "Herbal Plus" Gingko Biloba actually contained gingko biloba.

34. A reasonable purchaser would believe that Defendants' GNC "Herbal Plus" Ginseng actually contained ginseng.

35. Plaintiff and members of the Class reasonably relied on Defendants' package labeling of their Misbranded GNC "Herbal Plus" Products.

36. At point of sale, Plaintiff and members of the Class did not know, and had no reason to know, that Defendants' Misbranded GNC "Herbal Plus" Products were misbranded and adulterated as set forth herein. Plaintiff and members of the Class would not have bought the Misbranded GNC "Herbal Plus" Products had they known that the products contained none of the ingredients listed on the front of package label.

37. As a result of Defendants' misrepresentations of content, Plaintiff and thousands of others in Massachusetts purchased the products at issue.

38.     Defendants' labeling as alleged herein is false and misleading and designed to increase sales of the products at issue.

39.     Under Massachusetts ALM GL ch. 93A, on February 9, 2015, a written demand for relief, identifying the Plaintiff and the Class and reasonably describing the unfair or deceptive acts or practices relied upon and the injury suffered by Plaintiff and the Class, was mailed and delivered to each Defendant.

## CLASS ACTION ALLEGATIONS

40.     Plaintiff bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following classes:

> **Massachusetts Class**: All persons in the state of Massachusetts who, within the last four years, purchased any of the following GNC "Herbal Plus" products:
>
> (a)     GNC "Herbal Plus" Gingko Biloba
> (b)     GNC "Herbal Plus" Ginseng
> (c)     GNC "Herbal Plus" Echinacea
> (d)     GNC "Herbal Plus" St. John's Wort

41.     The following persons are expressly excluded from the Class: (1) Defendants and their subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

42.     This action can be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

43.     <u>Numerosity</u>:  Based upon Defendants' publicly available sales data with respect to the misbranded products at issue, it is estimated that the Class numbers in the thousands and that joinder of all Class members is impracticable.

8

44.     Common Questions Predominate:  This action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only individual Class members.  Thus, proof of a common set of facts will establish the right of each Class member to recover.  Questions of law and fact common to each Class member include, for example:

    a.     Whether Defendants engaged in unlawful, unfair or deceptive business practices by failing to properly package and label their Misbranded GNC "Herbal Plus" Products sold to consumers;

    b.     Whether the Misbranded GNC "Herbal Plus" Products are worthless.

    c.     Whether Plaintiff and the Class are entitled to equitable and/or injunctive relief;

    d.     Whether Defendants' unlawful, unfair and/or deceptive practices harmed Plaintiff and the Class; and

    e.     Whether Defendants were unjustly enriched by their deceptive practices.

45.     Typicality:  Plaintiff's claims are typical of the claims of the Class because Plaintiff bought Defendants' Misbranded GNC "Herbal Plus" Products during the Class Period. Defendants' unlawful, unfair, and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.  Plaintiff and the Class sustained similar injuries arising out of Defendants' conduct in violation of Massachusetts law. The injuries of each member of the Class were caused directly by Defendants' wrongful conduct. In addition, the factual underpinning of Defendants' misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

46.     <u>Adequacy</u>:  Plaintiff will fairly and adequately protect the interests of the Class. Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the Class members.  Plaintiff has retained highly competent and experienced class action attorneys to represent their interests and those of the members of the Class.  Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

47.     <u>Superiority</u>:  There is no plain, speedy, or adequate remedy other than by maintenance of this class action.  The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendants and result in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender.  Further, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.  Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

48. The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

49. The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are met as questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

50. Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

51. For each of the five causes of actions herein alleged *infra*, Plaintiff hereby realleges and incorporates the foregoing paragraphs.

## CAUSES OF ACTION

### COUNT ONE

**Breach of Implied Warranty of Merchantability**

52. Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

53. Under Massachusetts law, a good is merchantable only if it: (a) passes without objection in the trade under the contract description; (b) in the case of a fungible good, is of fair average quality within the description; (c) is fit for the ordinary purposes for which such goods are used; (d) runs, within the variations permitted by the agreement, of even kind, quality and

11

quantity within each unit and among all units involved; (e) is adequately contained, packaged, and labeled as the agreement may require; and (f) conforms to the promises or affirmations of fact made on the container or label if any. ALM GL ch. 106, § 2-314.

54. Defendants' Misbranded GNC "Herbal Plus" Products violated the implied warranty of merchantability because misbranded goods are incapable of complying with ALM GL ch. 106, § 2-314(a)-(e).

55. In addition, Defendants' Misbranded GNC "Herbal Plus" Products failed to conform to the promises or affirmations of fact made on the container or label of these products and thus breached the implied warranty of merchantability. Specifically, the labels on Defendants' Misbranded GNC "Herbal Plus" Products falsely promised and affirmed that they contained the gingko biloba, echinacea, St. John's wort, or ginseng when they contained none of these ingredients.

56. Defendants knowingly and intentionally mislabeled their Misbranded GNC "Herbal Plus" Products.

57. Plaintiff and the Class would not have knowingly purchased and consumed products that were misbranded.

58. Plaintiff and the Class would not have purchased and consumed misbranded Misbranded GNC "Herbal Plus" Products if they had known that the Products failed to conform to the promises and affirmations of fact made on their containers and labels.

59. By reason of the foregoing, Plaintiff and the Class were damaged in the amount they paid for the Misbranded GNC "Herbal Plus" Products, together with punitive damages.

## COUNT TWO

### Breach of Express Warranty

Case 1:15-cv-10288-NMG   Document 1   Filed 02/08/15   Page 13 of 17

60. Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

61. Defendants engaged in a scheme of offering misbranded and adulterated Misbranded GNC "Herbal Plus" Products for sale to Plaintiff and members of the Class by way of product packaging and labeling.

62. In furtherance of their plan and scheme, Defendants prepared and distributed within Massachusetts and nationwide, via product packaging and labeling, statements that misleadingly and deceptively represented the composition and nature of their Misbranded GNC "Herbal Plus" Products.

63. Plaintiff and the Class were the intended targets of such representations.

64. Plaintiff and the Class reasonably relied on Defendants' representations.

65. Defendants' affirmations of fact and/or promises relating to their Misbranded GNC "Herbal Plus" Products created express written warranties that the products would conform to Defendants' affirmations of fact and/or promises.

66. Alternatively, Defendants' descriptions of their Misbranded GNC "Herbal Plus" Products became part of the bases of the bargains, creating express written warranties that the products purchased by Plaintiff and the other Class members would conform to Defendants' descriptions and specifications.

67. In fact, the Misbranded GNC "Herbal Plus" Products purchased by Plaintiff and the Class did not so conform.

68. As a result of the foregoing, Plaintiff and the other Class members have suffered damages in that the Misbranded GNC "Herbal Plus" Products were not as warranted by Defendant.

13

## COUNT THREE

### Negligent Misrepresentation

69.     Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

70.     Defendants had a duty to lawfully and truthfully label their Misbranded GNC "Herbal Plus" Products.

71.     By not falsely labeling their Misbranded GNC "Herbal Plus" Products, Defendants breached this duty.

72.     Defendants' misstatements were due, at least in part, to their negligence and carelessness.

73.     Plaintiff and the Class reasonably relied upon Defendants' misstatements to their detriment.

74.     By reason of the foregoing, Plaintiff and the Class have suffered damages in an amount to be proved at trial, together with punitive damages.

## COUNT FOUR

### Unjust Enrichment

75.     Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

76.     As a result of Defendants' unlawful and deceptive actions described above, Defendants were enriched at the expense of Plaintiff and the Class through the payment of the purchase price for Misbranded GNC "Herbal Plus" Products.

77.     Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that they received from Plaintiff and the Class.

78.     By reason of the foregoing, Plaintiff and the Class were damaged in the amount they paid for Misbranded GNC "Herbal Plus" Products, together with punitive damages.

## PRAYER FOR RELIEF

Plaintiff, individually and on behalf of the Class, prays for judgment and relief against Defendants as follows:

A.   For an order certifying this case as a class action and appointing Plaintiff and Plaintiff's counsel to represent the Class;

B.   For an order awarding, as appropriate, damages, restitution, and/or disgorgement to Plaintiff and the Class including all monetary relief to which Plaintiff and the Class are entitled pursuant to under Massachusetts law;

C.   For an order requiring Defendants to immediately cease and desist from selling Misbranded GNC "Herbal Plus" Products in violation of law; enjoining Defendants from continuing to manufacture, deliver, offer to deliver, market, advertise, distribute, and sell Misbranded GNC "Herbal Plus" Products in the unlawful manner described herein; and ordering Defendants to engage in corrective action;

D.   For an order awarding attorneys' fees and costs;

E.   For an order awarding punitive damages;

F.   For an order awarding pre-judgment and post-judgment interest; and

G.   For an order providing such further relief as this Court deems just and proper.

Dated: February 9, 2015

Respectfully submitted

By:  /s/ *Erica C. Mirabella*

Erica C. Mirabella

MIRABELLA LAW, LLC
132 Boylston Street, 5th Floor
Boston, MA  02116
Telephone: 617-580-8270
Facsimile: 617-583-1905
erica@mirabellallc.com

Charles J. LaDuca
CUNEO GILBERT & LADUCA, LLP
8120 Woodmont Avenue, Suite 810
Bethesda, MD 20814
Telephone: 202-789-3960
Facsimile: 202-589-1813
charles@cuneolaw.com

Taylor Asen
CUNEO GILBERT & LADUCA, LLP
16 Court Street, Suite 1012
Brooklyn, NY 11241
Telephone: 202-789-3960
Facsimile: 202-589-1813
tasen@cuneolaw.com

Dewitt M. Lovelace
Valerie Lauro Nettles
LOVELACE AND ASSOCIATES, PA
12870 U.S. Hwy 98 West, Suite 200
Miramar Beach, FL 32550
Telephone:     (850) 837-6020
Facsimile:     (850) 837-4093
dml@lovelacelaw.com
valerie@lovelacelaw.com

Ben F. Pierce Gore
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA  95126
Telephone:  (408) 429-6506
Fax:  (408) 369-0752
pgore@prattattorneys.com

Richard R. Barrett
LAW OFFICE OF RICHARD R. BARRETT, PLLC
2086 Old Taylor Road
Suite 1011
Oxford, Mississippi 38655

Telephone: 662-380-5018
Fax: 866-430-5459
rrb@rrblawfirm.net

Don Barrett
DON BARRETT, P.A.
P.O. Box 927
404 Court Square North
Lexington, MS 39095
Telephone: (662) 834-2488
Toll Free: (877) 816-4443
Fax: (662) 834-2628
donbarrettpa@gmail.com

Kenneth R. Shemin
SHEMIN LAW FIRM, PLLC
3333 Pinnacle Hills Parkway, Suite 603
Rogers, AR 72758
Telephone:  (479) 250-4764
Facsimile:  (479) 845-2198

Thomas P. Thrash
THRASH LAW FIRM, P.A.
1101 Garland Street
Little Rock, AR 72201
Telephone:  (501) 374-1058
Facsimile:  (501) 374-2222

*Attorneys for Plaintiff*